UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MAREK DZIADOSZ, :

    Plaintiff : CIVIL ACTION NO. 3:21-0251

v. :

    (JUDGE MANNION)

GOC MYSZKOWSKI SP.JAWNA :
D/B/A GOC HARLEY-DAVIDSON
RZESZOW D/B/A GAME OVER :
CYCLES D/B/A EGO-LIGHT
SP.Z.O.O., STANISLAW :
MYSZKOWSKI, and KAROL MIKA,

     :

    Defendants

     :

## MEMORANDUM

On December 28, 2020, Plaintiff Marek Dziadosz ("Plaintiff" or "Dziadosz") filed a complaint in this District, (Doc. 1), asserting various claims against defendants GOC Myszkowski SP.JAWNA d/b/a GOC Harley-Davidson Rzeszow, Stanislaw Myszkowski, and Karol Mika (collectively, "Defendants") for intentional interference with contractual relations (Count I), intentional interference with prospective contractual relations (Count II), defamation (Count IIII), commercial disparagement (Count IV), libel (Count V), slander *per se* (Count VI), fraud (Count VII), common law harassment (Count VIII), tortious interference with a prospective economic advantage

(Count IX), intentional infliction of emotional distress (Count X), negligent infliction of emotional distress (Count XI), and equitable relief (Count XII).

Pending before the Court are two letters filed by defendants Myszkowski and Mika seeking to dismiss Plaintiff's complaint for lack of jurisdiction and improper venue. (Docs. 4, 5). Viewing the evidence in a light most favorable to the non-moving party, the Court will dismiss the Plaintiff's complaint without prejudice and grant Plaintiff the opportunity to amend.

I.   **BACKGROUND**

In January 2012, Plaintiff Marek Dziadosz, a recent resident of Poland, began work for defendant GOC Myszkowski SP.JAWNA ("GOC"), a Harley-Davidson dealership organized as a general partnership and maintaining a place of business in Rzeszow, Poland. Defendants Myszkowski and Mika, both residents of Poland, worked for defendant GOC in the motorcycle industry as a managing partner and manager respectively. Plaintiff alleges that he was hired by defendant GOC at the company's inception in a full-time position "developing new departments and business plans." In addition to such foundational business responsibilities, Plaintiff further claims that he "represented the GOC at trade shows, rallies, and other industry events," obtained funding for the development of GOC, built the company's "e-commerce store for both commercial and retail" business, created relationships with the manufacturers of motorcycle parts, and "was instrumental in facilitating the company's entry into the apparel market."

2

In 2017, Plaintiff claims that he entered the United States on a visitor visa "to attend the Harley-Davidson dealer meeting in Los Angeles, CA and to attend the Sturgis Rally in North Dakota." Plaintiff thereafter permanently emigrated to the United States and applied for a position with Pocono Mountain Harley-Davidson, located in Tannersville, Pennsylvania. Plaintiff claims that during discussions with representatives of Pocono Mountain Harley-Davidson, after applying for a position, he was told that "he was qualified and a perfect fit for a senior management position developing and operating the e-commerce store" for the company. In light of these conversations, Plaintiff alleges that "an oral agreement was reached by and between Harley-Davidson PA and Plaintiff regarding Plaintiff's employment as a senior high level manager and supervisor … with the attending salary, commissions, bonuses, staff and other perks." For Plaintiff, at this juncture, his employment was secured.

It is alleged, however, that on February 24, 2020, Pocono Mountain Harley-Davidson inquired as to Plaintiff's previous employment with Defendants and requested a reference from Defendants regarding Plaintiff's performance. In response to this request, Plaintiff claims that on or about March 5, 2020, Defendants emailed a response to Pocono Mountain Harley-Davidson that was "filled with untruths, falsehood and outright lies in a malicious attempt to destroy Plaintiff's job prospects." In addition to claims that Plaintiff "left behind a huge mess" and closed online vendor accounts, Defendants' email allegedly stated that Plaintiff:

3

> redirect [sic] online store emails to his private and locked up server with password which only he knows, he also redirect [sic] our company phone line to his private as well as he changed our building security password, and he made some changes in employee status on H-Dnet.com, those are just some of the things he did to backstabbing us and our dealership? He request [sic] from us monthly payment for giving us access to what belong [sic] to use. It took us several weeks and tons of money to get back to regular work.

The Defendants' response apparently concluded by stating that "[t]elling you information about Marek [Dziadosz] is very difficulty [sic] to me [sic] but also trying to save everyone every company [sic] from what he did to us."

Plaintiff asserts that, in light of this response, Pocono Mountain Harley-Davidson "did not extend and in fact retracted its offer of employment for the senior level e-commerce position" previously open to Plaintiff. Instead, Plaintiff was offered and accepted a "low-level hourly worker" position for a probationary period with "no staff, no office, and no resources to ensure success." Plaintiff accordingly argues that he was forced to remain in this position with meager responsibilities, fewer resources, no health insurance or paid vacation days, and lower pay as a result of the Defendants' malicious, retaliatory fabrications.

Plaintiff thereafter filed his complaint in this district bringing claims collectively seeking over $2,000,000.00 against defendants Myszkowski and Mika regarding their statements to Pocono Mountain Harley-Davidson, and against defendant GOC under the precept of vicarious liability. Plaintiff contends that this Court maintains diversity jurisdiction over this action

4

pursuant to 28 U.S.C. §1332(a)(2), and that venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2). On March 24, 2021, the defendants Myszkowski and Mika filed letters seeking to dismiss Plaintiff's complaint for lack of jurisdiction and improper venue.[1]

## II.   STANDARD

It is established that federal district courts shall have original jurisdiction of all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. §1332(a). In addition to original jurisdiction, courts must also maintain personal jurisdiction over the parties to retain authority over a case and the district in which a matter resides must reflect the proper venue.

Rule 12(b)(2) of the Federal Rules of Civil Procedure "allows a defendant to bring a motion challenging a court's right to exercise personal jurisdiction over them." Silva v. Maryland Screen Printers, Inc., 2005 WL

---

[1] Defendants Myszkowski and Mika do not contend in their submissions that the Plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Instead, in contrast to their claims regarding jurisdictional deficiencies, they raise as their main defense that the alleged maliciously false statements made by the Defendants upon which Plaintiff's claims are founded were in fact true. Though such a defense, if proven, may protect the Defendants from liability, an analysis and determination as to validity of these assertions would be untimely at this juncture.

2250842, at * 2 (M.D. Pa. Sept. 15, 2005) (citing Fed. R. Civ. P. 12(b)(2)). Once a defendant files a motion seeking to dismiss claims on jurisdictional grounds pursuant to Fed. R. Civ .P. 12(b)(2), the burden shifts to the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1121 (W.D. Pa. 1997). A plaintiff meets this burden by making a prima facie showing of "sufficient contacts between the defendant and the forum state." Id. (quoting Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992)). A Rule 12(b)(2) motion "inherently requires resolution of factual issues outside the pleadings." DiLoreto v. Costigan, 600 F.Supp.2d 671, 681 (E.D. Pa. 2009). Once the defense has been raised, a plaintiff must establish jurisdictional facts through sworn affidavits or other competent evidence but may not rely on the pleadings alone. Id. (citing Weber v. Jolly Hotels, 977 F.Supp. 327, 331 (D.N.J. 1997) (citation omitted)).

In the instance where the moving party submits competent evidence refuting jurisdiction, the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the matter shifts to the non-moving party. It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH, 2015 WL 365681, at *8 (M.D. Pa. Jan. 27, 2015) (citing In re Chocolate Confectionary Antitrust Litig., 674 F.Supp.2d 580, 595 (M.D. Pa. 2009) ("Once these allegations are contradicted by an opposing affidavit, however, plaintiff must present similar evidence in support of personal jurisdiction.")). Once the burden has shifted, the non-moving party may not rely on bare

6

pleadings but must support those pleadings with "actual proofs, not mere allegations." In re Chocolate Confectionary Antitrust Litig., 674 F.Supp.2d at 595 (quoting Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990)). As such, "although the burden of persuasion always lies with the non-moving party, the burden of production rests initially with the party moving for dismissal under Rule 12(b)(2)." Id. at 595, n.21.

In contrast, a defendant may bring a motion to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. Silva v. Maryland Screen Printers, Inc., 2005 WL 2250842, at *2 (M.D. Pa. Sept. 15, 2005). The burden of establishing improper venue rests with the defendant, who must show that upon a proper balancing of all relevant factors, the "case would be better off transferred to another district." In re United States, 273 F.3d 380, 388 (3d Cir. 2001).

### III.   DISCUSSION[2]

Defendants argue that this Court lacks jurisdiction to assert authority over them as parties to the litigation. It is uncontested that the Defendants, as residents of Poland, are considered "subjects of a foreign state," nor that

---

[2] Though the Defendants' letters do not reflect the proper format or include the necessary procedural references for a motion to dismiss, see Fed. R. Civ. P. 7(b), the Court recognizes that there exist questions regarding the Court's potential maintenance of jurisdiction and would be best addressed at this preliminary juncture for reasons of judicial economy.

the matter in controversy exceeds the sum or value of $75,000." Likewise, the Defendants do not contend that Plaintiff is not, as alleged, "a citizen of the Commonwealth of Pennsylvania domiciled in the Middle District of Pennsylvania." See (Doc. 1 at ¶ 9). Nevertheless, the Court must ensure that the Plaintiff meets his burden to establish proper jurisdiction and venue. 28 U.S.C. §1332(a).

### A. Diversity Jurisdiction

In accordance with the diversity jurisdiction statute, 28 U.S.C. §1332, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States ...." "When diversity of citizenship provides the grounds for federal jurisdiction, 'the pleadings should affirmatively disclose that such diversity exists.'" Westfield Ins. Co. v. Francois, 2010 WL 4668960, at *3 (M.D. Pa. Nov. 5, 2010) (quoting Osthaus v. Button, 70 F.2d 392, 392 (3d Cir. 1934)).

For purposes of diversity jurisdiction, a natural person is deemed to be a citizen of the state where he is domiciled. Swiger v. Allegheny Energy, Inc., 540 F.3d 179 182 (3d Cir. 2008) (citing Gilbert v. David, 235 U.S. 561, 569 (1915)). To be domiciled in a state, a person must reside there and intend to remain indefinitely. Krasnov v. Dinan, 465 F.2d 1298, 1300-01 (3d Cir. 1972). For an alien immigrating to the United States, this requires an established permanency of residence. 28 U.S.C. §1332(a); see also Gall v. Topcall Int'l,

A.G., 2005 WL 664502, at *4 (E.D. Pa. Mar. 21, 2005) (citing cases describing how Article III of the Constitution is clear that "federal courts may not exercise jurisdiction over a suit solely between two noncitizens," while "the Supreme Court has consistently held that Article III does not create jurisdiction in cases solely between aliens").

The "permanent residence" requirement in such circumstances refers to "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." Foy v. Schantx, Shatzman & Aaronson, P.A., 108 F.3d 1347, 1349 (11th Cir. 1997) (citing 8 U.S.C. §1101(a)(20)).[3] To fall within the "permanent residence" provision of Section 1332, it is not enough that an alien has applied for permanent residence status, resides in a state and

---

[3] Congress, through the Judicial Improvements and Access to Justice Act of 1988, extended Section 1332(a) to establish that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, §203(a), 102 Stat. 4642, 4646 (1988). "In interpreting the 'permanent residence' provision of 1332(a), courts have logically turned to a definition of the comparable phrase 'lawfully admitted for permanent residence' provided in United States immigration laws." De La Cruz v. Virgin Islands Water & Power Auth., 2010 WL 1484237, at *1 (D.V.I. Apr. 12, 2010) (listing cases limiting the term "lawfully admitted for permanent residence" under 1332(a) to mean "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws").

9

intends to remain indefinitely, or is admitted to reside in the United States on a temporary basis. Westfield Ins. Co., 2010 WL 4668960, at *2 (citing cases).

Where questions of a plaintiff's citizenship exist, particularly where the plaintiff immigrated to the United States, it would be insufficient to merely state that the plaintiff resides within a particular state, but the plaintiff must instead allege that he or she has been admitted to the United States for permanent residence. Westfield Ins. Co., 2010 WL 4668960, at *3. As the Plaintiff alleges only that he "is an individual residing in Monroe County, PA" and fails to describe an actual legal status, questions still remain as to whether this Court may retain jurisdiction.[4] The Plaintiff's complaint will therefore be dismissed without prejudice and the Plaintiff will be given the opportunity to amend to the degree that he can allege facts sufficient to establish residence.[5] Fed. R. Civ. P. 15(a)(2) (leave to amend "shall be freely given when justice so requires").

---

[4] Plaintiff does also state that he is a "citizen of the Commonwealth of Pennsylvania," but the Court cannot simply assume, based on such a nondescript claim, that the Plaintiff has gained United States citizenship, particularly in a period of no greater than four years where the procedural hurdles faced by those working towards citizenship through the U.S. immigration system are oftentimes burdensome.

[5] Courts traditionally may find alternative means through which they may have the parties clarify certain questions surrounding jurisdiction. See Gall v. Topcall Intern., A.G., 2005 WL 664502, at *1 (E.D. Pa. Mar. 21, 2005) (plaintiff was directed to submit "supplemental briefs on the issue of jurisdiction" as he also sought to file an amended complaint alleging that the plaintiff was "'an alien admitted to the United States for permanent residence'

10

B. <u>Personal Jurisdiction</u>

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987)</u>. As this matter was filed in this district, this Court must apply the Pennsylvania long-arm statute, which provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." <u>42 Pa. C.S.A. §5322(b)</u>; *see also* <u>O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007)</u>. Accordingly, in deciding whether there is personal jurisdiction, courts must determine whether there are "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)</u> (internal quotation marks omitted); *see also* <u>World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)</u> (there must be sufficient "minimum contacts" between the non-

---

in Pennsylvania"). Nevertheless, as an amended pleading would be necessary for a true adjudication as to whether this Court maintains jurisdiction, the Court will require the Plaintiff to amend his complaint to address, if possible, the outstanding jurisdictional questions. As the parties, and in particular, the Defendants, have also failed to fully brief the issues of jurisdiction, the Court also seeks to ensure that the proper briefing form is followed in accordance with the Federal Rules of Civil Procedure.

11

resident defendant and the forum state such that the defendant "would reasonably anticipate being haled into court there").

Personal jurisdiction may manifest in two forms: specific jurisdiction or general jurisdiction. Helicopteros Nacionales De Columbia v. Hall, 466 U.S. 408, 414-16 (1984). Specific jurisdiction applies to claims that are "related to or arise out of" the defendant's contacts with the forum state. Id. at 414. To exercise specific jurisdiction over a defendant, the court must find that: (1) the defendant purposefully directed its activities at the forum, (2) each cause of action "arise[s] out of or relate[s] to at least one" of the defendant's activities, and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice." D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d. Cir. 2009) (internal quotation marks and citations omitted); O'Connor, 496 F.3d at 317.

There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The touchstone of the minimum contacts analysis is thus "whether the defendant has purposefully directed its activity toward the forum state." AMP Inc. v. Methode Electronics Inc., 823 F.Supp. 259, 262 (M.D. Pa. 1993); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). To meet this requirement, the defendant's physical entrance into the forum is not necessary. See Burger King Corp., 471 U.S. at 476 ("[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents

12

of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there" (listing cases)). A defendant's contacts, however, must amount to "a deliberate targeting of the forum." O'Connor, 496 F.3d at 317.

Though the Defendants' business is based in Rzeszow, Poland, they do maintain an online presence operating both in the European Union and in the United States and have allegedly traveled within the United States to make purchases and sales. The degree these connections attach the Defendants to this District, however, is quite tenuous, even as businesses have developed to operate internationally.[6] Nevertheless, it must be recognized that the Defendants purposefully reached into this district to provide reference information to Pocono Mountain Harley-Davidson that allegedly included malicious, retaliatory fabrications. In instances where a defendant attempts to impact established or prospective contractual relationships, intentionally defame, slander or libel a plaintiff, defraud or harass a plaintiff, or otherwise undermine a plaintiff's career opportunities

---

[6] Cases in Pennsylvania, such as Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), have established a "sliding scale" for determining whether efforts by a business to reach into a jurisdiction through the internet would be sufficient to establish personal jurisdiction. Id. at 1123. Specifically, courts have drawn a distinction between "passive websites" that merely provides information to those in need and "interactive websites" where a user can exchange information with the host computer. The basis of any jurisdiction, however, will instead be based on the circumstances surrounding the Plaintiff's claims.

could constitute conduct a defendant would expect to lead him or her to be "haled into court." See Rusack v. Harsha, 470 F.Supp. 285, 291-92 (M.D. Pa. 1978) (sending defamatory materials directed at a plaintiff into Pennsylvania without further contacts provides sufficient grounds upon which a court may maintain jurisdiction); see also R.C. Casad, Jurisdiction in Civil Actions §8.03, n.186-88 (2020) (citing cases establishing that courts "almost always find no due process problems" where a defendant, whether initiating communications or not, voluntarily sends defamatory comments or materials into the forum). Finding that a defendant had made such efforts to a degree that establishes minimal contact between the defendant and the jurisdiction, however, is not dispositive for purposes of establishing jurisdiction.

Instead, in instances where it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 320. Courts in "appropriate case[s]" thus may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." World-Wide Volkswagen Corp., 444 U.S. at 292.

In this matter, this Court recognizes that the Defendants would face an increased burden by having to litigate in a foreign jurisdiction. An increased burden on the Defendants, however, would not by itself make proceedings in this district unfair or substantially unjust. In fact, federal courts have maintained specific jurisdiction where a defendant has "purposefully directed its activity toward the forum state" through e-mail communications. Reaching into a jurisdiction, even if electronically, may be sufficient to establish minimal contacts where "fair play and substantial justice" necessitate that the case proceeds. Nevertheless, though this Court, in light of the questions surrounding the Plaintiff's own residence, does not make a final determination as to whether minimal contact may be established through a single communication, it seems unreasonable to establish that a defendant residing halfway across the world may be dragged into court in this jurisdiction purely on the basis of one e-mail – particularly where this e-mail was in response to a request for information.[7]

---

[7] In contrast to specific jurisdiction, general jurisdiction applies to claims which need not arise out of the defendant's forum related activities, but where the defendant has had "continuous and systematic" contacts with the forum state. Helicopteros Nacionales De Columbia, 466 U.S. at 415-16. Based on the allegations raised by the Plaintiff, however, this Court anticipates that were it to retain jurisdiction, it would do so through means of specific jurisdiction rather than general jurisdiction. *See supra* n.6.

### C. Proper Venue

A civil suit in federal court based on diversity may be brought only in certain districts. Venue is appropriate in any district: where any defendant resides, if all defendants reside in the same State; in which a substantial part of the events or omissions giving rise to the claim occurred; or in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a).

As discussed above, however, this Court will refrain from making a determination as to whether it should exercise personal jurisdiction over the parties, even as the events or omissions giving rise to the claims in question allegedly occurred in this District. The Court will instead expect further briefing on the issues, particularly after the Court is provided clarity as to the legal standing of the parties. Thereafter, this Court will make a determination as to whether venue is proper under 28 U.S.C. §1391.

## IV. CONCLUSION

For the reasons set forth above, the Court will dismiss the Plaintiff's complaint without prejudice and allow the Plaintiff to file an amended complaint addressing the status of Plaintiff's residence. A separate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: December 10, 2021**
21-251-01.wpd